UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARK AVENUE AESTHETIC SURGERY, P.C.,<br><br>        Plaintiff,<br><br>        v.<br><br>EMPIRE BLUE CROSS BLUE SHIELD, and GROUPFIRST OF MARYLAND, INC. AND GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., d/b/a CAREFIRST BLUECROSS BLUESHIELD,<br><br>        Defendants. | Case No. 1:19-cv-09761-JGK |

## <u>AMENDED COMPLAINT</u>

By way of this Amended Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Park Avenue Aesthetic Surgery, P.C. ("Park Avenue," or "Plaintiff") brings this action against defendants Empire Blue Cross Blue Shield ("Empire") and GroupFirst of Maryland, Inc. and Group Hospitalization and Medical Services, Inc., d/b/a CareFirst BlueCross BlueShield ("CareFirst") (collectively, "Defendants").

1.     This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services.

2.     Defendant CareFirst was the insurer of the Howard Hughes Medical Institute (the "Plan"), under which the patient, LG, was the Plan participant.  Patient LG signed an Assignment of Benefits to Plaintiff and designated Plaintiff as her Authorized Representative under ERISA.

3.      Defendant Empire was the Host Plan under the Blue Card Program, which applied in this case, and CareFirst was the Home Plan.

4.      Patient LG was initially diagnosed with a genetic predisposition to breast cancer and had undergone a bilateral mastectomy with immediate tissue expander placement during the first-stage breast reconstruction surgery.  A tissue expander expands the skin and allows the subsequent placement of the breast implant during the second stage of the breast reconstruction surgery.   However, Patient LG suffered from multiple bouts of infection resulting in disfigurements and asymmetry of her breast reconstruction and chest wall. Her breast reconstruction surgeon performed a third surgery to correct these disfigurements.  Six months later, her surgeon performed a final surgery to correct the residual and donor site disfigurements.

5.      The first two surgeries were performed on November 16, 2016, and May 10, 2017, respectively, by Keith Blechman, M.D., a breast reconstruction specialist surgeon affiliated with Plaintiff.    A third surgery was performed on March 28, 2018.

6.      Dr. Blechman did not participate in Defendant's network of contracted health care providers.

7.      After each of these three breast reconstruction surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendant Empire for a total amount of $312,927.00.  Defendants reimbursed Plaintiff only $24,934.70, leaving an unreimbursed amount of $287,992.30 for which Patient LG remains liable.   Defendants paid 7% of the total billed amount.

## JURISDICTION

8.      The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9.     The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New York, and otherwise has minimum contacts with the State of New York sufficient to establish personal jurisdiction over it.

10.     Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Empire resides, is found, has an agent, and transacts business in the Southern District of New York, (b) Empire conducts a substantial amount of business in the Southern District of New York, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Southern District of New York; and (c) CareFirst transacts business in the Southern District of New York through its Host Plan, Empire, under the Blue Card Program, by sending appeal letter response letters and other correspondence to persons in this District.

11.     Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or where she alleges that the violation of ERISA occurred.  Plaintiff alleges that Defendant violated ERISA within the Southern District of New York.

## **PARTIES**

12.     Plaintiff Park Avenue Aesthetic Surgery P.C., then affiliated with Board-certified surgeon Dr. Keith Blechman, specializes in breast reconstruction and other microsurgical procedures.  Its principal office is in New York City.

13.     Defendant Empire Blue Cross Blue Shield is a health care insurance company with offices located in New York City and offers Blue Cross Blue Shield-branded health care insurance in the State of New York.

14.     Defendant CareFirst is a licensee of the Blue Cross and Blue Shield Association ("BCBSA"), and offers health insurance to members in Maryland, the District of Columbia and Northern Virginia. It is the insurer of the Howard Hughes Medical Institute, LG's Plan. Its principal offices are in Baltimore and Washington, D.C.

## FACTUAL ALLEGATIONS

### A.  The Blue Card Program

15.     The Blue Card Program, in which each Blue Card Blue Shield licensee of the BCBSA must participate, including Empire and CareFirst, was the direct result of all the Blue Cross Blue Shield licensees under the direction of the BCBSA to engage in exclusive geographic allocation. Under this practice, each licensee was allocated a specific exclusive geographical region to market health insurance.  This practice continues today.

16.     Empire's allocated geographic market region is New York City and its surrounding counties.  It cannot offer health insurance to members in Maryland or Washington, D.C., regions that are allocated to CareFirst.

17.     CareFirst's allocated geographic market region is Maryland, Washington, D.C., and portions of Northern Virginia.  It cannot offer health insurance to members in New York City because that region is allocated to Empire.

18.     As part of their mandatory agreement to participate in the Blue Card Program, Empire and CareFirst agreed that other than in contiguous areas (counties adjacent to their allocated geographical market areas), they each will not contract, solicit, or negotiate with medical providers outside of their allocated geographical market areas.

19.     To effectuate this agreement, the BCBSA created Host and Home Plans.

20.     The BCBS insurer located in the allocated geographical market area where the provider's service is provided is referred to as the Host Plan.

4

21.     The BCBS insurer located in the allocated geographical market area where the member is enrolled is referred to as the Home Plan.

22.     Empire was the Host Plan because Plaintiff's medical services were provided to Patient LG in Empire's allocated geographical market area.

23.     CareFirst was the Home Plan because Patient LG was enrolled in CareFirst's allocated geographical market area.

24.     An integral part of the Blue Card Program is that the Home Plan relies on the Host Plan's network of providers, since it is within the Host Plan's allocated geographical market area that the provider's services are provided.

25.     Even when an out-of-network provider is involved, the Home Plan relies on the Host Plan to determine reimbursement rates and to communicate with providers.  The Host Plan-based provider must bill the Host Plan for all services and procedures.

26.     CareFirst relied on Empire as the Host Plan to adjudicate appeals and communicate the results of such adjudications directly to Plaintiff.

27.     Another entity and BCBSA licensee involved was the National Accounts Service Company (NASCO), upon information and belief owned by CareFirst, which sent Explanation of Benefits ("EOBs") and denial codes to Patient LG.

**B.      November 1, 2016 Breast Surgery**

28.     On November 1, 2016, patient LG, who suffered from a genetic predisposition to breast cancer and had bilateral mastectomies and breast reconstruction, underwent surgery for bilateral capsulectomy and explantation because of deformity and asymmetry of her implant breast reconstruction.  Capsulectomy is the surgical removal of scar tissue or capsule that has become thickened and hardened around a breast implant.  Explantation means the removal of such tissue and placement in culture. Dr. Blechman, Patient LG's breast reconstruction surgeon, performed a

5

muscle flap advancement to reconstruct the right and left chest wall deformity, a bilateral breast reconstruction, reinforcement of the abdominal donor site, and an umbilical hernia repair.  He was assisted by Oren Lerman, M.D.

29.      Both Dr. Blechman and Dr. Lerman did not participate in Empire's network.

30.      Dr. Blechman and Dr. Lerman received prior authorization from Empire under A02408518 for this medically necessary service.

31.      After performing this breast reconstruction surgery, Plaintiff submitted invoices on a CMS-1500 forms, as required, to Empire for $157,664.00.  The billed amounts, paid amounts, and CPT codes for Dr. Blechman were as follows:

**1.     Dr. Blechman**

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| S2068-LT-59 | $40,000.00 | $6,892.12 |
| 15734-LT | $18,500.00 | $2,885.38 |
| 19371-LT-59 | $12,000.00 | $1,257.62 |
| 49585 | $7,664.98 | $431.66 |
| 19328-LT-59 | $3,000.00 | $794.40 |
| 15777-LT | $3,000.00 | $413.53 |
| **Total** | **$84,164.98** | **$12,174.71** |

CPT code S2068 is breast reconstruction with deep inferior epigastric perforator (diep) flap. CPT 19734 is a flap procedure. CPT codes 19371 and 19328 are breast reconstruction. The modifier -59 means a distinct procedure that should be independently reimbursed. CPT code 49585 is herniotomy procedures.  CPT 15777 are flaps and grafts procedures.  This is an add-on code that should not be subject to the multiple surgery rule.

6

32.     Plaintiff also submitted an invoice on a CMS-1500 form to Empire representing the services of Dr. Lerman as Assistant Surgeon. Dr. Blechman operated on the patient's left breast, and Dr. Lerman operated on the patient's right breast. The billed amounts, paid amounts, and CPT codes were as follows:

**2.     Dr. Lerman**

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| S2068-80-RT | $40,000 | $2,756.83 |
| 15734-80-RT | $18,500.00 | $1,538.84 |
| 19371-80-RT | $12,000.00 | $0 |
| 19328-80-RT | $3,000.00 | $0 |
| **Total** | **$73,500.00** | **$4,295.67** |

Modifier -80 denotes an assistant surgeon.

33.     Together Defendants determined that the Allowed Amount was $16,470.38, leaving an unpaid amount of $141,193.62.

34.     NASCO sent an EOB to Patient LG on June 21, 2017, stating without further explanation that "[t]his charge exceeds the maximum amount we allow for this service."

35.     Plaintiff filed an appeal concerning the amount of Defendant's reimbursement on December 13, 2017.  Empire denied this appeal on January 8, 2018.  Empire stated: "Please be advised the claim processed and paid correctly as per pricing allowance."  No further explanation was provided.

36.     The Plan required only one level of appeal and it was exhausted by the denial of the appeal on January 8, 2018.  Plaintiff therefore exhausted its administrative remedies.

37.     Empire stated the following in its denial letter in its entirety: "Please be notified the claim processed and paid correctly as per pricing allowance."  The letter was signed by "Hemalatha E," BlueCard Program Dedicated Service Center, and was on Empire stationary.

38.     This statement was a violation of the terms of LG's Plan and constituted a violation of ERISA.  Both the Plan and ERISA required that the claimant be permitted to review the claim file and present evidence and testimony as part of the internal claims and appeals process.  Further, the Plan specifies that the Plan (or its designee, in this case, Defendant), must provide the claimant its full rationale for its Final Internal Adverse Benefit Determination.  This rationale must include a "discussion" of the decision.

39.     The same applies to the EOB sent to Patient LG on June 21, 2017 which stated without further explanation that "[t]his charge exceeds the maximum amount we allow for this service."  There was no disclosure of the basis for the maximum amount and the existence of any internal protocol or methodology upon which the maximum amount was based.

40.     The same also applies to Empire's denial of the appeal on January 8, 2018.  When Empire stated that "[p]lease be advised the claim processed and paid correctly as per pricing allowance," it failed to disclose the basis for any such pricing allowance.

41.     This language failed to comply with the terms of LG's Plan and violated ERISA, 29 C.F.R. § 2560.503-1(g). Empire failed to disclose the amount of the "pricing allowance," so that neither Plaintiff nor this Court could review it (and therefore the administrative record is inadequate), and failed to disclose the basis upon which Empire utilized this "pricing allowance" as compared to some other methodology to reimburse Plaintiff's claims.  CareFirst failed to disclose the amount and methodology of "maximum amount." Defendants also failed altogether to explain why they refused to reimburse Dr. Lerman for two CPT codes, and why they utilized

the multiple surgery rule to reduce reimbursement for an add-on CPT code in violation of the National Correct Coding Initiative ("NCCI"), which Defendants are required to follow.

42.     In addition, the December 14, 2016 EOB specifically conceded that "[a]n internal rule, guideline, or protocol was relied upon in making this adverse benefit determination and a copy of such will be provided free of charge upon your request."

43.     In a second appeal of the unpaid amount of $141,193.62, Plaintiff sent a letter to Empire and CareFirst dated February 12, 2018, specifically requesting for the documents on which the denial was based.  Defendants failed to comply, which represented a violation of ERISA.

### C.     May 10, 2017 Breast Surgery

44.     On May 10, 2017, Dr. Blechman performed additional surgery on Patient LG, including a bilateral mastoplexy (changing the contours of the breasts), fat grafting, and repair of the donor site deformity.   Plaintiff obtained prior authorization from Empire.

45.     Plaintiff submitted an invoice on a CMS-1500 form, as required, to Empire for $104,850.00.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 20926-RT | $36,000.00 | $517.81 |
| 20926-LT | $36,000.00 | $517.81 |
| 19316-RT | $12,000.00 | $1,863.96 |
| 19316-LT | $12,000.00 | $1,863.96 |
| 12037-59 | $5,350.00 | $767.12 |
| 11406-59 | $3,500.00 | $500.21 |
| **Total** | **$104,850.00** | **$6,030.87** |

CPT codes 20926 is grafting. CPT code 19316 is breast reconstruction.  CPT Code 12037 is repair of the integumentary (skin) system. CPT code 11406 means excision of benign lesions on the skin. The modifier -59 means a distinct procedure that should be independently reimbursed.

46.     Defendants determined that the Allowed Amount for the May 10, 2017, surgery was $6,030.87, leaving an unpaid amount of $98,819.13

47.     In its EOB, NASCO stated without further explanation: "This charge exceeds the maximum amount we allow for this service."

48.     Plaintiff filed an appeal on October 30, 2017.  Plaintiff filed a second appeal on February 15, 2018. CareFirst made a final adverse benefit decision on March 26, 2018.  Plaintiff exhausted its administrative remedies.

49.     CareFirst stated in its denial letter in its entirety: "The decision of the Plan is that the original benefit determination has been upheld.  We have declined to provide reimbursement (in whole or part) for the treatment or service noted in the claim(s)."

50.     The CareFirst letter went on to describe its "Professional Reimbursement Methodology."  It stated that it had developed "fee schedules" maintained by geographical region, all within the exclusive service area served by CareFirst: Washington D.C., Baltimore, and rural Maryland.  "Application of a geographical pricing region is based on the location of the practitioner's primary location for each practice affiliation."

51.     There are two significant problems with reimbursing Plaintiff based on CareFirst's "Professional Reimbursement Methodology."  First, Plaintiff's practice location is New York City, not in any of CareFirst's geographical regions.

52.     Second and even more importantly, reimbursing Plaintiff based on CareFirst's "Professional Reimbursement Methodology" breached the terms of the Plan and therefore constituted a violation of ERISA.  The Plan's definition of "Allowed Benefits," requires that for

"a Health Care Provider that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is based upon the Health Care Provider's actual charge."

53.    Defendant Empire, as the Host Plan, should have paid the actual charge, which is the billed charge, not the Home Plan's lower and self-invented charge based on a "Professional Reimbursement Methodology" based on its reimbursement level for providers in its allocated geographic market region which included rural Maryland.   Since there were no patient responsibility amounts (co-pay, co-insurance, or deductibles), the entire billed amount should have been paid.

54.    Defendants did not reimburse Plaintiff's actual charge, in breach of the terms of the Plan and in violation of ERISA which requires adherence to the terms of the ERISA plan.

### C.    March 28, 2018 Breast Surgery

55.    On March 28, 2018, Dr. Blechman performed additional surgery on Patient LG, including right breast reduction and left breast grafting to correct for persistent asymmetry and deformity of her breast reconstruction.  Plaintiff obtained prior authorization from Empire.

56.    Plaintiff submitted an invoice on a CMS-1500 form, as required, to Empire for $59,413.00.   Plaintiff billed CPT codes 20926-LT for $36,000.00 and 19318-RT (breast reconstruction) for $23,413.00. Defendants paid a total of $2,433.45.   This left a patient responsibility amount (deductible and co-insurance) of $1,810.98 and a total unpaid amount of $56,979.95, or 96% of the billed amount.

57.    Plaintiff filed an appeal on March 5, 2019.  Defendant Empire made a final adverse benefit decision on May 7, 2019, stating it its entirety: "Please be notified that this claim was paid and processed correctly." Nonetheless, Plaintiff filed a second appeal on June 3, 2019. Plaintiff exhausted its administrative remedies.

58.     The May 7, 2019 letter was signed by "Anusha P.," BlueCard Program Dedicated Service Center and was on Empire stationary. It was in the same handwriting as "Hemalatha E," described above, indicating that it was machine drawn.

59.     This statement was a violation of the terms of LG's Plan and constituted a violation of ERISA.  Both the Plan and ERISA required that the claimant be permitted to review the claim file and present evidence and testimony as part of the internal claims and appeals process.  Further, the Plan specifies that the Plan (or its designee, in this case, Defendant Empire), must provide the claimant its full rationale for its Final Internal Adverse Benefit Determination.  This rationale must include a "discussion" of the decision.

60.     The sentence furnished by Defendant failed to comply with the terms of LG's Plans and violated ERISA, 29 C.F.R. § 2560.503-1(g). Defendant Empire failed to disclose why it believed the claim was paid correctly, including the methodology it used (if any) so that neither Plaintiff nor this Court could review it (and therefore the administrative record is inadequate). Defendant Empire therefore failed altogether to explain why it refused to reimburse Plaintiff fully for Dr. Blechman's services.

61.     When Defendants denied Plaintiff's claims they did not do so pursuant to the rules promulgated under ERISA.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

62.      Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

63.      Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

64.      Deemed exhaustion is set out in 29 C.F.R. § 2560.503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

65.      Plaintiff received an Assignment of Benefits from Patient LG and Designation of Authorized Representative.  It states, in relevant part:

I, the undersigned, represent that I have valid and in-force insurance and/or employee health care benefits coverage and hereby assign and convey directly to Dr. Keith M. Blechman and Park Avenue Aesthetic Surgery, P.C., (the "provider(s)") and The Law Offices of Cohen & Howard LLP as my Statutory Derivative Beneficiary (SDB), commonly known as a Designated Authorized Representative, and a Claimant under the "Patient Protection and Affordable Care

Act (PPACA), existing ERISA and other applicable and other applicable federal and state laws, of all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from the provider(s), regardless of the provider's managed care network participation status. . . . I hereby convey to the provider(s) to the full extent permissible under law and under any applicable employee group plan(s), insurance policies or liability claim, any claim, cause of action, or other right I may have to such group health plans . . . any administrative or judicial actions by the provider(s) to pursue such claim.

66.     Review of the Plan's Summary Plan Description ("SPD") reveals that its purported "Non-Assignment of Benefits" section does not, in fact, preclude the assignment of benefits in this case.

67.     The language at issue begins: "Plan participants cannot assign, pledge, borrow against, or otherwise promise any benefit payable under the Plan before receipt of that benefit."

68.     Patient LG did not assign her benefits prior to receipt.  Her assignment commenced after she received benefits but was under-reimbursed. Therefore, Patient LG's assignment of benefits to Plaintiff is effective.

69.     In addition, Plaintiff is an Authorized Representative of Patient LG.

**D.     Coverage of Breast Reconstruction under the WHCRA**

70.     Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires group health plans to cover breast reconstruction after a mastectomy.  This law, codified at 29 U.S.C. § 1185b, states:

(a) In general. A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –

(1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .

14

(d)     Rule of construction. Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

71.     29 U.S.C. § 1185b(d), which deals with negotiation of reimbursement amounts with providers, concerns participating providers.  Defendant did not negotiate with Dr. Blechman or Plaintiff.

72.     The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denial of coverage for breast reconstruction on the basis that such reconstruction was cosmetic.  As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery.  Well, it is not.  Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic.  And that is wrong. Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

73.     Patient LG's Plan specifically sets out the requirements of the WHCRA in the "Mastectomy—Related Services" section of the Plan.  This section provides:

> Coverage for reconstructive breast surgery, including coverage for all stages of reconstructive breast surgery performed on a non-diseased breast to establish breast symmetry with the diseased breast when reconstructive breast surgery is performed on the diseased breast including augmentation mammoplasty, reduction mammoplasty, and mastopexy.

74.     Notwithstanding this federal mandate, Defendant did not have any Board-Certified breast reconstruction specialists with admitting privileges at Manhattan Eye, Ear & Throat Hospital on the dates in 2016-2018 when Patient LG needed her reconstruction surgeries, who were qualified to perform the surgeries.

75.     Dr. Blechman performed a cutting-edge breast reconstruction procedure called the DIEP Flap, for which he billed CPT code S2068. This procedure uses a flap of complete tissue, blood vessels, skin and fat from a woman's lower abdomen as the donor tissue.  The flap is transplanted to the chest and the blood vessels are individually connected.  The flap is then surgically shaped, or reconstructed, into a new breast.  Unlike the TRAM flap, the DIEP Flap preserves the abdominal muscles and allows the preservation of abdominal strength and integrity. This procedure requires two microsurgeons, a primary and an assistant surgeon, working together for 8-12 hours.  There are few surgeons who, like Dr. Blechman, have the proper training and skill to perform this complex surgery.

76.     Dr. Blechman is Board Certified by the American Board of Plastic Surgery. He is a graduate of renowned plastic surgery training programs at both New York University and MD Anderson Cancer Center, and he specializes in reconstructive procedures for skin cancer and breast cancer, as well as transgender breast surgery. He is Director of the Breast Reconstruction Center of New York City, and a member of the American Board of Plastic Surgery, the American Society of Plastic Surgeons, the American Society for Reconstructive Microsurgery, the Medical Society of the State of New York, and the World Professional Association of Transgender Health. He is President-Elect, New York Regional Society of Plastic Surgeons.

77.     A decision to cover breast reconstruction (because it is a federal mandate) but assess the patient $287,992.30 in out-of-pocket costs is not a coverage decision.  It is, instead, a decision forcing patient LG to self-insure her own breast reconstruction surgery, in violation of the WHCRA.

78.     Based on the above, Defendants should have approved Dr. Blechman as an out-of-network specialist but ensured that Patient LG received her breast reconstruction surgery at the in-

network level of patient responsibility. Instead, Patient LG was charged out-of-network-level co-pays for the March 28, 2018, surgery.

## COUNT I

### CLAIM AGAINST EMPIRE FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

79.    Defendant Empire is obligated to pay benefits to Plan participants and beneficiaries in accordance with the terms of its Plans, and in accordance with ERISA.

80.    Defendant Empire violated its legal obligations under this ERISA-governed plan when it, together with Defendant CareFirst, under-reimbursed Plaintiff for breast reconstruction surgeries provided to patient LG by Plaintiff, in violation of the terms of the governing Certificate of Coverage and Summary Plan Description, and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

81.    Plaintiff submitted invoices to Defendant Empire in the amount of $312,927.00. Defendant Empire together with Defendant CareFirst reimbursed Plaintiff only $24,934.70, leaving an unreimbursed amount of $287,992.30 for which Patient LG remains liable.

82.    Defendant Empire acted by itself in making denials and appellate denials and acted as Defendant CareFirst's agent under the Blue Card Program.

83.    Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Empire. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant.

## COUNT II

### CLAIM AGAINST CAREFIRST FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

84.    Defendant CareFirst is obligated to pay benefits to Plan participants and beneficiaries in accordance with the terms of its Plans, and in accordance with ERISA.

17

85.     Defendant CareFirst violated its legal obligations under this ERISA-governed plan when it, together with Defendant Empire, under-reimbursed Plaintiff for breast reconstruction surgeries provided to patient LG by Plaintiff, in violation of the terms of the governing Certificate of Coverage and Summary Plan Description, and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

86.     Plaintiff submitted invoices to Defendant Empire in the amount of $312,927.00. Defendant CareFirst together with Defendant Empire reimbursed Plaintiff only $24,934.70, leaving an unreimbursed amount of $287,992.30 for which Patient LG remains liable.

87.     Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Empire. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant CareFirst.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a)     Ordering to recalculate and issue unpaid benefits to the Plaintiff;

(b)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c)     Awarding prejudgment interest; and

(d)      Granting such other and further relief as is just and proper.

Dated: December 17, 2019

> /s/ Robert J. Axelrod
> AXELROD LLP
> 800 Third Avenue, Suite 2800
> New York, NY 10022
> (646) 448-5263
> rjaxelrod@axelrodllp.com

Michael Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff Park Avenue
Aesthetic Surgery, P.C.