UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARK AVENUE AESTHETIC SURGERY, P.C.,<br><br>                    Plaintiff,<br><br>          v.<br><br>EMPIRE BLUE CROSS BLUE SHIELD, and GROUPFIRST OF MARYLAND, INC. AND GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., d/b/a CAREFIRST BLUECROSS BLUESHIELD,<br><br>                    Defendants. | Case No. 1:19-cv-09761-JGK |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTIONS TO DISMISS THE AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTUAL BACKGROUND .......................................................................................... 4

III.  ARGUMENT .................................................................................................................. 8

   A.   Standard Of Review ............................................................................................... 8

   B.      The Amended Complaint Alleges That the Plan's Assignment Provision Did Not
   Prohibit Assignments ...................................................................................................... 8

   C.      The Amended Complaint Alleges That the Patient Designated Plaintiff as an
   Authorized Representative ............................................................................................. 10

   D.      The Amended Complaint's 2016 And 2017 Surgery Claims Were Not  Time-Barred . 13

   E.   The Amended Complaint States A Claim ............................................................. 16

   F.      Defendant Empire Is A Proper Defendant……………………………………………19

IV.  CONCLUSION ............................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 8

*Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76 (S.D.N.Y. 2019) .................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 8

*Brown v. J.B. Hunt Transp. Servs.*, 586 F.3d 1079 (8th Cir. 2009) ................................. 20

*Burke v. PricewaterhouseCoopers LLP Long Term Disability Plan*,
572 F.3d 76 (2d Cir. 2009) .................................................................................................. 9

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) .............................. 11

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
591 F.3d 1337 (11th Cir. 2009) ......................................................................................... 12

*Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011) .................................. 20

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) ....................................................................... 11

*Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012) ......................... 11

*Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J. Inc.*,
2007 U.S. Dist LEXIS 94056 (D.N.J. December 26, 2007) ........................................... 12

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) ........... 20

*Heffner v. Blue Cross Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006) ........... 20

*I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*,
136 F.3d 114 (2d Cir. 1998) ............................................................................................. 11

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79 (D. Mass. 1998) ... 12

*Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008) ................................. 19

*Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013) ............................. 20

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*,
2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016) ............................................... 10

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ................................ 8
   *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986) ..... 12

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006) .................................. 20

*New York State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015)........... 4, 20

*Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*,
2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015) ........................................... 10

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*,
2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ......................................... 12

**Statutes**

ERISA, § 502(a)(1)(B)......................................................................................... passim

Women's Health and Cancer Rights Act ............................................................... passim

**Rules**

Fed. R. Civ. R. 12(b)(6) ........................................................................................ 8

**Regulations**

29 C.F.R. § 2560.503-1(b)(4) ........................................................................... 2, 10

Plaintiff Park Avenue Aesthetic Surgery, P.C. ("Park Avenue," or "Plaintiff"), hereby respectfully files this memorandum of law in opposition of the motions of Defendant Empire Blue Cross Blue Shield ("Empire") and Defendant Group Hospitalization and Medical Services, Inc., d/b/a CareFirst BlueCross BlueShield (CareFirst) (together, "Defendants") to dismiss the Amended Complaint.  For the reasons that follow, Defendants' motions should be denied.[1]

## I.    <u>INTRODUCTION</u>

This ERISA case involves Defendants' substantial under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services. Keith Blechman, M.D., a breast reconstruction specialist surgeon affiliated with Plaintiff, performed three reconstruction surgeries on the patient, a plan participant of the Howard Hughes Medical Institute (the "Plan"). The Plan requires reimbursement based on billed charges for out-of-area out-of-network providers where a patient did not have reasonable access to an in-network provider. Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires insurers to cover and reimburse post-mastectomy breast reconstruction surgery.

After performing the surgeries, Plaintiff submitted invoices to Defendant Empire for a total amount of $312,927.00.  Defendants Empire and CareFirst reimbursed Plaintiff only $24,934.70, leaving an unreimbursed amount of $287,992.30 for which the patient remains liable.  Defendants paid 7% of the total billed amount. The ultimate issue in this case is how Defendants paid only

---

[1] Empire and CareFirst filed separate briefs.  For the sake of judicial efficiency, and because there is some overlap between Defendants' arguments, Plaintiff responds with one brief opposing both motions.

$24,000.000 for nearly $313,000.00 in billed charges for specialized breast reconstruction surgeries.

Defendants Empire and CareFirst move to dismiss based on a variety of reasons. Empire and CareFirst contends that Plaintiff lacks standing under ERISA because the Plan has an anti-assignment provision. This provision, however, is different from the standard anti-assignment provision that prohibits assignments of plan benefits. This provision prohibits assignments of plan benefits only "before receipt of that benefit." In this case, the Amended Complaint alleges that the patient assigned benefits after receipt of benefits. Am. Compl. ¶ 68. The assignment provision of the Plan does not prohibit assignment under this circumstance.

The Amended Complaint alleges that the patient designated Plaintiff as an Authorized Representative. The Designation of Authorized Representative is authorized by ERISA. 29 C.F.R. § 2560.503-1(b)(4). This designation is not limited to internal appeals. The claimant's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf the claimant. Although Defendants contend otherwise in virtually identical footnotes, they are mistaken.

Defendants also move to dismiss on the basis that the Plan's internal two-year statute of limitations bars the 2016 and 2017 surgery claims. The limitations provision states that a lawsuit must be filed within two years of the date on which the claim is "incurred." Defendants posit that a claim is incurred on the date of service.

They apply the definition of "incurred" from the Plan's set of definitions specific to "Evidence of Coverage." An internal limitations period, just as a statutory limitations period, is different. "Incurred" in the context of a limitations period means "accrued."

Specifically, in the context of an ERISA claim, the claim within any limitations period, including the internal limitations period at issue, is not incurred and does not accrue until each of the conditions precedent for the claim is satisfied.  A plaintiff cannot maintain an ERISA claim against an insurer, claim administrator, or plan upon providing medical services to a patient.  The plaintiff must perform the following, in this order, before an ERISA claim is incurred: (a) submit an invoice to the insurer; (b) receive an Explanation of Benefits ("EOB") from the insurer evidencing under-reimbursement; (c) submit the required appeals to the insurer (and/or plan) within the required time period under the plan; and (d) receive responses to the appeals and thereby exhaust administrative remedies.  Any deviation from (a)-(d), other than exhaustion futility or deemed exhaustion, and the plaintiff cannot be said to have incurred an ERISA claim.

This is bolstered by the plan terms themselves, which state that "[b]efore pursuing legal action for benefits under the Plan, you must first exhaust the Plan's claim, review and appeal procedures."

Both Defendants also contend that the Amended Complaint should be dismissed because it "does not tie Plaintiff's demand for additional benefits to any specific plan term." This charge is belied by the specific allegations of the Amended Complaint.  It alleges that "the Plan's definition of "Allowed Benefits" requires that for "a Health Care Provider that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is based upon the Health Care Provider's actual charge."  Am. Compl. ¶ 52.  The Amended Complaint also alleges that post-mastectomy breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires that it be covered and reimbursed. Am. Compl. ¶¶ 70-72. The Plan specifically set out the requirements of the WHCRA in the "Mastectomy—Related Services" section of the Plan. Am. Compl. ¶ 73.

3

Finally, Empire (but not CareFirst), citing caselaw in other circuits, contends that it is not a proper defendant because an ERISA § 502(a)(1)(B) claim is enforceable only against a healthcare plan as an entity or a claims administrator. In *New York State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015), the Second Circuit held that non-plan defendants may be sued under § 502(a)(1)(B). Defendant Empire's motion to dismiss on the basis that it is not a proper defendant is without merit.

Defendants' motions to dismiss the Amended Complaint should be denied.

## II.    FACTUAL BACKGROUND

On November 1, 2016, patient LG, who had undergone bilateral mastectomies and breast reconstruction, underwent surgery for bilateral capsulectomy and explantation because of deformity and asymmetry of her implant breast reconstruction. Am. Compl. ¶ 28.[2] Dr. Blechman, performed a muscle flap advancement to reconstruct the right and left chest wall deformity, a bilateral breast reconstruction, reinforcement of the abdominal donor site, and an umbilical hernia repair. He was assisted by Oren Lerman, M.D. *Id.* Neither Dr. Blechman nor Dr. Lerman participated in Empire's network.

Dr. Blechman performed a highly specialized surgical procedure called DIEP (deep inferior epigastric perforator breast reconstruction procedure). Am. Compl. ¶ 31. This surgery could only be performed by fellowship-trained microsurgeons. One- and two-year fellowship training is post-residency and beyond Board certification.

---

[2] Capsulectomy is the surgical removal of scar tissue or capsule that has become thickened and hardened around a breast implant. Explantation means the removal of such tissue and placement in culture.

After receiving prior authorization from Empire, and after performing this breast reconstruction surgery, Plaintiff submitted invoices on a CMS-1500 forms, as required, to Empire for $157,664.00. Am. Compl. ¶¶ 30-31. Together Defendants determined that the Allowed Amount was $16,470.38, leaving an unpaid amount of $141,193.62. Am. Compl. ¶¶ 32-33. Defendants' EOB stated without further explanation that "[t]his charge exceeds the maximum amount we allow for this service." Am. Compl. ¶ 34.

Plaintiff filed an appeal concerning the amount of Defendant's reimbursement, which Empire denied on January 8, 2018. Empire stated: "Please be advised the claim processed and paid correctly as per pricing allowance." It provided no further explanation. Am. Compl. ¶ 35.

The Plan required only one level of appeal and it was exhausted by the denial of the appeal on January 8, 2018. Plaintiff therefore exhausted its administrative remedies as to this claim. Am. Compl. ¶ 36.

On May 10, 2017, Dr. Blechman performed additional surgery on Patient LG, including a bilateral mastoplexy (changing the contours of the breasts), fat grafting, and repair of the donor site deformity. Plaintiff obtained prior authorization from Empire. Plaintiff submitted an invoice on a CMS-1500 form, as required, to Empire for $104,850.00. Defendants determined that the Allowed Amount for the May 10, 2017, surgery was $6,030.87, leaving an unpaid amount of $98,819.13. Am. Compl. ¶¶ 44-46.

Defendant CareFirst made a final adverse benefit decision on March 26, 2018. It stated in its denial letter in its entirety: "The decision of the Plan is that the original benefit determination has been upheld. We have declined to provide reimbursement (in whole or part) for the treatment or service noted in the claim(s)." Am. Compl. ¶ 49. Plaintiff exhausted its administrative remedies.

On March 28, 2018, Dr. Blechman performed additional surgery on Patient LG, including right breast reduction and left breast grafting to correct for persistent asymmetry and deformity of her breast reconstruction.  Plaintiff obtained prior authorization from Empire. Am. Compl. ¶ 55.

Plaintiff submitted an invoice on a CMS-1500 form, as required, to Empire for $59,413.00. Defendants paid a total of $2,433.45.  This left a total unpaid amount of $56,979.95, or 96% of the billed amount. Am. Compl. ¶ 56.

Defendant Empire made a final adverse benefit decision on May 7, 2019, stating it its entirety: "Please be notified that this claim was paid and processed correctly." Am. Compl. ¶ 57. Plaintiff exhausted its administrative remedies.

In the EOB for the second surgery, Defendants stated without further explanation: "This charge exceeds the maximum amount we allow for this service." Am. Compl. ¶ 47. The CareFirst appeal denial letter described its "Professional Reimbursement Methodology" based on "fee schedules" maintained by geographical region, all within the exclusive service area served by CareFirst: Washington D.C., Baltimore, and rural Maryland.  "Application of a geographical pricing region is based on the location of the practitioner's primary location for each practice affiliation." Am. Compl. ¶ 50.

The Plan's definition of "Allowed Benefits," however, requires that for "a Health Care Provider that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is based upon the Health Care Provider's actual charge." Am. Compl. ¶ 52.  Defendants did not reimburse Plaintiff its actual charge, under the terms of the Plan. Am. Compl. ¶ 54.

In addition, Defendants did not reimburse Plaintiff pursuant to the statutory terms of the WHCRA.

Plaintiff received an Assignment of Benefits from Patient LG and a Designation of Authorized Representative. It states, in relevant part:

> I, the undersigned, represent that I have valid and in-force insurance and/or employee health care benefits coverage and hereby assign and convey directly to Dr. Keith M. Blechman and Park Avenue Aesthetic Surgery, P.C., (the "provider(s)") and The Law Offices of Cohen & Howard LLP as my Statutory Derivative Beneficiary (SDB), commonly known as a Designated Authorized Representative, and a Claimant under the "Patient Protection and Affordable Care Act (PPACA), existing ERISA and other applicable and other applicable federal and state laws, of all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from the provider(s), regardless of the provider's managed care network participation status. . . . I hereby convey to the provider(s) to the full extent permissible under law and under any applicable employee group plan(s), insurance policies or liability claim, any claim, cause of action, or other right I may have to such group health plans . . . any administrative or judicial actions by the provider(s) to pursue such claim.

Plaintiff submitted invoices and received under-reimbursement in this case under the Blue Card Program, in which each Blue Cross Blue Shield licensee of the Blue Cross Blue Shield Association, including Defendants Empire and CareFirst, must participate. This Program exists because each BCBS entity offers insurance and contracts with providers only within its exclusive geographical region. Am. Compl. ¶¶ 15-16.

Under the Blue Card Program, Defendant Empire was the Host Plan and Defendant CareFirst was the Home Plan. The BCBS insurer located in the allocated geographical market area where the member is enrolled is referred to as the Home Plan. Empire was the Host Plan because Plaintiff's medical services were provided to the patient in Empire's allocated geographical market area. CareFirst was the Home Plan because the patient was enrolled in CareFirst's allocated geographical market area. Am. Compl. ¶¶ 22-23.

### III.  **ARGUMENT**

#### A.  **Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. R. 12(b)(6), the allegations in the Amended Complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 77 (S.D.N.Y. 2019); *Morales v. Anyelisa Rest. Corp.*, 2019 U.S. Dist. LEXIS 126713, at*2-*3 (S.D.N.Y. July 30, 2019); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the Amended Complaint if the plaintiff has stated "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### B.  **The Amended Complaint Alleges That the Plan's Assignment Provision Did Not Prohibit Assignments**

Defendants Empire and CareFirst contend that Plaintiff lacks standing under ERISA because the Plan has an anti-assignment provision. They seek to have the Court interpret this provision in their favor as a matter of law on their motions to dismiss. The Court should decline that invitation. The Amended Complaint alleges that the provision did not prohibit assignments. It alleges why: the provision prohibits assignments of plan benefits only "before receipt of that benefit." It alleges that the patient assigned benefits after receipt of benefits. Am. Compl. ¶ 68. The assignment provision of the Plan does not prohibit assignment under this fact-based circumstance.

Defendant Empire says nothing about this language in the six pages it devotes to the assignment issue in its brief. Defendant CareFirst attempts to call this a "spendthrift" clause and

contends (contradicting Defendant Empire's argument) that it does *not* apply to "assignments for purposes of transferring a member's rights under ERISA." CareFirst Br. at 17. That is, while Defendant Empire calls the provision at issue an anti-assignment provision precluding Plaintiff's standing under ERISA (but ignores the "before receipt" language), Defendant CareFirst says this provision has nothing to do with assignments and nothing to do with ERISA standing at all.

This standoff might be dispositive if it were not for the fact that Defendant CareFirst takes it two steps further. It contends that the Plan SPD does not permit assignments in another section. However, this section explicitly states that benefits payable under the Plan shall not be subject to assignment *except* to the extent the Plan "allows for the provision of benefit payments directed to hospitals, physicians, and other providers of services in payment for covered services or goods." (Doc. 32-3, at 48). The Plan did so. Am. Compl. ¶¶ 33, 46-47, 56.

Then Defendant CareFirst switches from the Plan SPD to the Evidence of Coverage ("EOC") for new definitions, going back and forth. The SPD and EOC are different documents and they cannot be used interchangeably. When they conflict, the SPD must apply. CareFirst Br. at 5-6. The fact that the EOC refers to preferred providers does not negate or overrule the assignment provision in the SPD prohibiting assignments only before receipt of plan benefits.

Certainly, where ERISA plan language unambiguously prohibits assignment, an assignment will be ineffectual. However, there is nothing unambiguous about Defendant CareFirst's *multiple layers* of plan language derived from *multiple sources*. Determining whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation. The Court "must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous." *Burke v. PricewaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009).

Here, the assignment provision alleged by the Amended Complaint – with which Defendant Empire does not take issue – is unambiguous: it states "before receipt of that benefit." The convoluted layers of provisions and different documents Defendant CareFirst cites are different. Even Defendants disagree with each other about their meaning. They are by their very nature ambiguous and, as such, subject to factual determinations that should not be adjudicated as a matter of law on a motion to dismiss.

### C.     The Amended Complaint Alleges That the Patient Designated Plaintiff as an Authorized Representative

The Amended Complaint alleges that the patient designated Plaintiff as an Authorized Representative. Am. Compl. ¶ 65. The Designation of Authorized Representative is authorized by ERISA. 29 C.F.R. § 2560.503-1(b)(4).  This designation is not limited to internal appeals.  The claimant's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the claimant.  Although Defendants contend otherwise in virtually identical footnotes, they are mistaken.[3]

---

[3] Defendant CareFirst's citation to *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016), is inapposite. In *Minimally Invasive Surgery*, the court noted that the "plaintiffs fail to explain how their purported status as "authorized representatives" under this regulation is distinguishable from their theory that they are proper assignees of their patients' Claims." In *Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015), the plaintiff did not point to a "Designation of Authorized Representative" form or to any rulemaking authority. In this case, 29 C.F.R. § 2560.503-1(b)(4) and the allegation that the patient designated Plaintiff as the Authorized Representative, Am. Compl. ¶ 65, distinguishes both cases. Contrary

The claimant's authorized representative is also entitled to pursue available remedies under ERISA § 502(a)(1)(B) on behalf of the claimant.  80 Fed. Reg. 72266 (Nov. 18, 2015) (permitting litigation).

The United States Supreme Court made clear that ERISA must be interpreted uniformly and must not vary state by state on the basis of each jurisdiction's law. *Egelhoff v. Egelhoff*, 532 U.S. 141, 149 (2001).  ERISA is to be interpreted in light of "federal common law" and in a manner that furthers "ERISA's purposes." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 135 (3d Cir. 2012).

The issue of uniformity was resolved in the interpretation of the assignment provision itself.  Health insurers and plans argued that assignments of benefits were limited to internal appeals and not to federal litigation under ERISA –the identical argument Defendants make with respect to the Designation of Authorized Representative form in this case.

The Second Circuit – and virtually every other circuit court – rejected this cramped reading. *See I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA"). In *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014), the Third Circuit adopted the majority position on the issue standing-by-assignment.

Courts understood that without standing to sue under ERISA, any purported rights could not be enforced and would be rendered illusory. *Conn. State Dental Ass'n v. Anthem Health Plans,*

---

to Defendant's statement, a Designation of Authorized Representative is enforceable and cannot be contractually waived.

*Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009). *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79, 84 (D. Mass. 1998) ("An assignment to receive payment of benefits necessarily incorporates the right to seek payment.  As Plaintiff argues, the right to receive benefits would be hollow without such enforcement capabilities."); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.,* 2007 U.S. Dist. LEXIS 61137, at *12 (D.N.J. Aug. 20, 2007) ("[T]his Court …finds that it is illogical to recognize that [a provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J. Inc.*, 2007 U.S. Dist LEXIS 94056, at * 7-8 n.1 (D.N.J. December 26, 2007) ("[A]n assignment of benefits under a plan includes the assignment of the right to sue for such benefits, for without the latter, the former would be unenforceable."). Even where monies are paid to the patient, the patient must then forward these monies to the provider.

The Court should treat the Designation of Authorized Representative the same under Second Circuit law as an assignment (although it does not come under any anti-assignment provision) for purposes of recognizing standing under ERISA.  The Designation of Authorized Representative should not be limited to internal appeals for the same reason that assignments have been held as not so limited:  it would make it "unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment," and it would eliminate "the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986).

### D.   The Amended Complaint's 2016 And 2017 Surgery Claims Were Not Time-Barred

Defendants move to dismiss the Amended Complaint on the basis that the Plan's internal two-year statute of limitations bars the 2016 and 2017 surgery claims.[4]  The limitations provision states that a lawsuit must be filed within two years of the date on which the claim is "incurred." Defendants contend that that date is the date of service.[5]

What Defendants have done is conflate the fundamental differences between the meaning of the word "claim" in two separate settings.  While a claim under the Plan for medical services as against the patient may occur upon the date of service (just as a contractual claim for 100 widgets may be resolved upon delivery), the provider's internal "claim" for payment for medical services as against the insurer does not occur – or is not "incurred" – until the provider bills the insurer and is not paid or underpaid (just as the deliverer of the widgets does not have a "claim" until payment is tendered). "Incur" means "to become liable."   The right to sue on a contract only "accrues" when the contract is breached (not on suspicion that it might be breached). The meaning of the word "claim" differs between who receives the goods or services and who receives the compensation.

---

[4] Defendants do not move to dismiss the 2018 surgery claim as untimely.

[5] Defendants "reserve their rights" to maintain that Maryland's three-year statute of limitations would apply because this is where Defendant CareFirst and the Plan are based.  CareFirst has two principal offices: Baltimore and Washington, D.C. Am. Compl. ¶ 14.  The statute of limitations in Washington, D.C. is six years.  This case was brought in the Southern District of New York, which looks to New York state-law (not where a defendant is based).  The statute of limitations for breach of contract in New York is six years.

Defendants apply the definition of "incurred" from the Plan's set of definitions specific to "Evidence of Coverage." An internal limitations period, just as a statutory limitations period, is different. "Incurred" in the context of a limitations period means "accrued."

In the context of this ERISA claim, a claim is not incurred and does not accrue until each of the conditions precedent for the claim is satisfied. A plaintiff cannot maintain an ERISA claim against an insurer, claim administrator, or plan upon providing medical services to a patient. The plaintiff must perform the following before an ERISA claim is incurred: (a) submit an invoice to the insurer; (b) receive an EOB from the insurer evidencing under-reimbursement; (c) submit the required appeals to the insurer (and/or plan) within the required time period under the plan; and (d) receive responses to the appeals and thereby exhaust administrative remedies. Any deviation from (a)-(d), other than exhaustion futility or deemed exhaustion, and the plaintiff cannot be said to have incurred an ERISA claim.

This is bolstered by the plan terms themselves, which state that "[b]efore pursuing legal action for benefits under the Plan, you must first exhaust the Plan's claim, review and appeal procedures." This correctly describes when an ERISA claim is "incurred." For the November 1, 2016 surgery, Empire denied the appeal on January 8, 2018. Am. Compl. ¶ 35.

Applying the two-year internal statute of limitations from this date, not the date of surgery, any claim would not be time-barred until January 8, 2020. For the May 10, 2017 surgery, CareFirst denied the appeal on March 26, 2018. Am. Compl. ¶ 48. The original Complaint was filed on October 22, 2019. The claims were timely.[6]

_____

[6] Defendants' contention that the "claims" were "incurred" on the dates of service upon which then the internal statute of limitations began to run ends with a perverse result. Since "incur" means

_____

"liable," Defendants must concede that they were liable for reimbursement for the surgeries at the date of service (and would be liable for all medical services performed by all providers at the date of service).

However, Defendants would not go so far, fatally undermining their contention that a claim is incurred at the date of service. Defendants determine whether a service or procedure is covered under the plan, whether it is medically necessary, preauthorized, or a multiple surgical procedure, at the time of making a reimbursement determination, which is subsequent to the date of service and being billed. These issues, among many others, go into the amount of reimbursement paid – the amount for which Defendants believe they are "liable." This is, in fact, the first time that Defendants make a determination of their liability: when they make a reimbursement determination, after they are billed, not on the date of service.

At this point, a plaintiff must exhaust her administrative remedies through the internal appellate process: sending an appeal and waiting for a response to the appeal.  Under Defendants' flawed scenario, the two-year internal statute of limitations clock is ticking from the moment the provider performs the surgery, and within this period the provider and his patient must bill the Defendants, wait to receive the EOB and payment (if any), appeal, and wait to receive an appeal response from Defendants.  Since Plaintiff cannot commence an action until each of these are complete, if they are not complete within the limitations period Plaintiff cannot commence the action either.  Defendants simply need to push off their response time until the expiration of the two-year period and they have achieved immunity from a "claim" under ERISA (if a plaintiff bring a claim earlier a defendant will defend on the basis of lack of exhaustion).

15

E.       **The Amended Complaint States A Claim**

Both Defendants also contend that the Amended Complaint should be dismissed because it "does not tie Plaintiff's demand for additional benefits to any specific plan term." The Amended Complaint alleges that "the Plan's definition of "Allowed Benefits" requires that for "a Health Care Provider that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is based upon the Health Care Provider's actual charge." Am. Compl. ¶ 52.

Defendants cite to the Plan's out-of-network rate. However, the out-of-network rate did not apply to the reimbursement of the surgical procedures in this case. Under the Plan, Plaintiff was not only out-of-network with Defendant CareFirst; it was also out-of-area, because Plaintiff was located in New York City and CareFirst was located in Maryland, Northern Virginia, and Washington, D.C. The Plan's reimbursement rate for out-of-area out-of-network providers was as follows, based on the Blue Card Program:

For 2018:

> When a Member receives Covered Services outside CareFirst's service area and the claim is processed through the BlueCard Program, the amount a Member pays for Covered Services is calculated based on the lower of:
>
> • The billed charges for Covered Services; or
> • The negotiated price that the Host Blue makes available to CareFirst.

(Doc. 32-6, at 41).

For 2016:

> CareFirst may pay claims from Non-Participating Providers outside of CareFirst's service area based on the provider's billed charge, such as in situations where a Member did not have reasonable access to a PPO/Participating Provider . . .

(Doc. 32-4, at 37).[7]  The Amended Complaint alleges that Defendant Empire (the Host Plan) did not have any Board-Certified breast reconstruction specialists with admitting privileges at Manhattan Eye, Ear & Throat Hospital on the dates in 2016-2018 when the patient needed her reconstruction surgeries, who were qualified to perform the surgeries.  Am. Compl. ¶ 74. This is especially true since the DIEP surgery performed was so specialized that only fellowship-trained microsurgeons are qualified to perform it.

The Amended Complaint also alleges that post-mastectomy breast reconstruction is a federal mandate under the WHCRA, which requires that it be covered and reimbursed. Am. Compl. ¶¶ 70-72. The Plan specifically set out the requirements of the WHCRA in the "Mastectomy—Related Services" section of the Plan, as required under 29 U.S.C. § 1185b(b). Am. Compl. ¶ 73.

This law, codified at 29 U.S.C. § 1185b, states:

> (a) **In general.** A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –
>
> > (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .
>
> (c)      **Prohibitions.**  A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –
>
> > (2)  penalize or otherwise reduce or limit the reimbursement of an attending provider,
>
> (d)      **Rule of construction.**  Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance

---

[7] Defendant CareFirst quotes this language in its brief, CareFirst Br. at 8, but does not apply it.

coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

The structure of this statute is straightforward.  29 U.S.C. § 1185b(a) requires that post-mastectomy breast reconstruction surgery be *covered*. 29 U.S.C. § 1185b(c) prohibits any restrictions or limitations on the *reimbursement rate* for this type of surgery, whether performed by an in-network surgeon or an out-of-network surgeon, as compared to other types of surgery where a plan or insurer may reimburse based on an out-of-network reimbursement methodology. However, 29 U.S.C. § 1185b(d), provides an exception to the strict requirement of 29 U.S.C. § 1185b(c): the plan or insurer may negotiate a lower reimbursement amount with the provider.

In this case, Defendants could have, but failed to, negotiate with and execute an agreement with Plaintiff to pay a lower amount.  Instead, it unilaterally reimbursed Plaintiff based on not its out-of-network methodology, but on something else entirely, in violation of the WHCRA. Defendants' failure to reimburse Plaintiff pursuant to the WHCRA was a violation of ERISA, 29 U.S.C. § 1132(a)(1)(b).

The terms of the WHCRA state that a plan's reimbursement for breast reconstruction surgery is different from reimbursement for other surgeries.  Although Defendant CareFirst suggests that a plan must cover breast reconstruction surgery "to the same extent it covers other benefits," this is clearly wrong.  This language does not appear in the statute.[8]

_____

[8] The closest the WHCRA comes to this is the language in section (a), which states: "Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage." Obviously, this involves deductibles and coinsurance, not reimbursement levels.  If it did, plans and insurers would be free to pay what they did prior to the enactment of the WHCRA for breast

18

Defendants' other arguments concerning the WHCRA are equally unavailing. They posit that the WHCRA does not "create a stand-alone cause of action." There is no private right of action under the WHCRA, and there is no need for one. Because the WHCRA is a federal mandate, imposing coverage and benefits for mastectomy and post-mastectomy breast reconstruction procedures on health insurance plans – it may be enforced by ERISA § 502(a)(1)(B).

Defendant CareFirst appears to misconstrue the operation of the WHCRA in arguing that this statute does not require a plan to "create any special exceptions" to the amount of its coverage for breast reconstruction. The WHCRA does not impose more coverage and benefits than the Plan because the terms of the WHCRA are incorporated into the Plan. 29 U.S.C. § 1185b(b).[9]

### F.   Defendant Empire Is A Proper Defendant

Empire contends that it is not a proper defendant because an ERISA § 502(a)(1)(B) claim is enforceable only against a healthcare plan as an entity or a claims administrator. For this proposition, it cites out-of-circuit law (much of it subsequently overruled) but not on-point caselaw within this Circuit.

In *New York State Psychiatric Ass'n,* 798 F.3d at 132, the Second Circuit held that non-plan defendants may be sued under § 502(a)(1)(B). It stated: "We ultimately reject United's

---

reconstruction surgery: nothing or some small amount. This reads out the reimbursement provision of section (c), and because there would be no reason to negotiate, section (d).

[9] *Krauss v. Oxford Health Plans, Inc*., 517 F.3d 614 (2d Cir. 2008), is distinguishable. The plaintiff's claim for reimbursement was confined to the cost-sharing amounts consistent with those of other plans under 29 U.S.C. 1185b(a), and the court had no occasion to make any decision concerning the actual reimbursement amount mandated under 29 U.S.C. 1185b(c).

argument that it cannot be sued under § 502(a)(1)(B) as a claims administrator.  By its plain terms, § 502(a)(1)(B) does not preclude suits against claims administrators." *New York State Psychiatric* cited cases in the Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits.[10]  It also cited to *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), in which the United States Supreme Court held that a non-plan defendant may be sued under § 502(a)(1)(B).

Defendant Empire denied Plaintiff's appeals.  Am. Compl. ¶¶ 35, 37, 40, 57. Its contention that it is not a proper defendant under § 502(a)(1)(B) is without merit.

## IV.    **CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss the Amended Complaint.

Dated: April 10, 2020

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Michael Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

---

[10] *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013); *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs., Inc.*, 703 F.3d 835, 843 (5th Cir. 2013); *Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011); *Brown v. J.B. Hunt Transp. Servs.*, 586 F.3d 1079, 1081 (8th Cir. 2009); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *Heffner v. Blue Cross Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1333 (11th Cir. 2006).

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff Park Avenue
Aesthetic Surgery, P.C.