**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PARK AVENUE AESTHETIC SURGERY, P.C., | : Case No. 1:19-cv-09761-JGK |
| | : |
| | : Hon. John G. Koeltl |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| EMPIRE BLUE CROSS BLUE SHIELD and GROUPFIRST OF MARYLAND, INC. AND GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. d/b/a CAREFIRST BLUECROSS BLUESHIELD, | : |
| Defendants. | : |

---

**BRIEF OF DEFENDANT GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. d/b/a CAREFIRST BLUECROSS BLUESHIELD IN FURTHER SUPPORT OF MOTION TO DISMISS AND IN REPLY TO PLAINTIFF'S OPPOSITION**

---

**BECKER LLC**
Michael E. Holzapfel, Esq. (*Pro Hac Vice*)
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
(973) 251-8943
meholzapfel@becker.legal
Attorneys for Group Hospitalization and
Medical Services, Inc. d/b/a CareFirst
BlueCross BlueShield

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

LEGAL ARGUMENT ............................................................................ 1

    I.  The Plan's Anti-Assignment Provision Prohibits Plaintiff From Asserting
       Derivative Standing Under ERISA § 502(a)(1)(B), and 29 C.F.R. 2560.503-1(b)(4)
       Confers No Independent Standing on Providers............................................. 1

    II.  The FAC is Time-Barred as to Patient's First Two Dates of Service ......................... 5

    III.  Nothing in ERISA, the WHCRA, or the Plan Requires that Plaintiff be
        Reimbursed 100% of its Actual Charges for Patient's Surgery................................. 6

CONCLUSION.................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aerocare Medical Transport System, Inc. v. IBEW Local 1249 Insurance Fund*,
2018 WL 6622192 (N.D.N.Y. Dec. 18, 2018) .......................................................................... 3, 4

*AllianceMed LLC v. Aetna Life Ins. Co.*,
2017 WL 394524 (D. Ariz. Jan. 30, 2017) ...................................................................................... 4

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018) ........................................................................................................... 2

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ........................................................................................................................ 3

*Heimeshoff v. Hartford Life & Accident Insurance Co.*,
571 U.S. 99 (2013) .......................................................................................................................... 6

*Infoeuro Group v. Aetna Life Ins. Co.*,
2019 WL 3006549 (C.D. Cal. May 3, 2019) .................................................................................. 4

*K.S. v. Thales USA, Inc.*,
2020 WL 773166 (D.N.J. Feb. 20, 2020) ....................................................................................... 7

*Krauss v. Oxford Health Plans, Inc.*,
418 F. Supp. 2d 416 (S.D.N.Y. 2005) ............................................................................................ 8

*Lobello v. New York Cent. Mut. Fire Ins. Co.*,
152 A.D.3d 1206 (N.Y. App. Div. 2017) ....................................................................................... 5

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
2016 WL 2939164 (S.D.N.Y. May 19, 2016) ................................................................................ 4

*McCulloch Orthopedic Surgical Services, PLLC v. Aetna, Inc.*,
857 F.3d 141 (2d Cir.  2017) .......................................................................................................... 1

*Med. Soc'y of New York v. UnitedHealth Grp. Inc.*,
2019 WL 1409806 (S.D.N.Y. Mar. 28, 2019) ............................................................................... 3

*Memorial Hermann Health System v. Pennwell Corporation Medical and Vision Plan*,
2017 WL 6561165 (S.D. Tex. Dec. 22,  2017) ............................................................................... 4

*Menkowitz v. Blue Cross Blue Shield of Illinois*,
2014 WL 5392063 (D.N.J. Oct. 23, 2014)..................................................................... 4

*Merrick v. UnitedHealth Grp. Inc.*,
175 F. Supp. 3d 110, 122 (S.D.N.Y. 2016)................................................................... 3

*Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*,
2015 WL 4387981 (D.N.J. Jul. 15, 2015)..................................................................... 4

*Rapoport v. Asia Elecs.*,
88 F.Supp.2d 179 (S.D.N.Y.2000) ............................................................................. 2

*Schussheim v. First Unum Life Ins. Co.*,
2012 WL 3113311 (E.D.N.Y. Jul. 31, 2012) ............................................................... 3

**Statutes**

ERISA § 502(a)(1)(B)............................................................................................ *passim*

29 U.S.C. § 1185b................................................................................................. 7-8

**Rules**

29 C.F.R. § 2560.503-1......................................................................................... 1, 3,4

## PRELIMINARY STATEMENT

CareFirst submits this brief in further support of its motion to dismiss the FAC, and in reply to Plaintiff's Opposition. CareFirst has identified three arguments favoring dismissal, all of which are firmly rooted in ERISA case law: (1) Plaintiff, an out-of-network provider, lacks standing under ERISA § 502(a)(1)(B); (2) the FAC is time-barred as to the Patient's first two dates of service; and (3) the FAC fails to plausibly plead that 100% of Plaintiff's full charge is a benefit due under the terms of the Plan. The Opposition fails to rebut CareFirst's arguments.

## LEGAL ARGUMENT

I.   **The Plan's Anti-Assignment Provision Prohibits Plaintiff From Asserting Derivative Standing Under ERISA § 502(a)(1)(B), and 29 C.F.R. 2560.503-1(b)(4) Confers No Independent Standing on Providers.**

ERISA § 502(a)(1)(B) confers direct standing *only* upon plan "participants" and "beneficiaries," terms which do not encompass medical providers. *Moving Brief*, p. 14. Although providers may acquire derivative standing through an assignment of benefits, they may do so only if the plan does not prohibit assignments. If the plan prohibits assignments through an anti-assignment provision, the provider may not assert derivative standing under ERISA, and any assignment of benefits is a "legal nullity." *McCulloch Orthopedic Surgical Services, PLLC v. Aetna, Inc.*, 857 F.3d 141, 147 (2d Cir. 2017); *Moving Brief*, p. 14.[1]

---

[1]   The Opposition suggests that by simply pleading "assignee" status, that is sufficient to defeat a motion to dismiss. *Opposition*, p. 8. Not so. The FAC's allegations regarding "standing by assignment" derive from Plaintiff's (erroneous) characterizations of Plan-related documents. *FAC*, ¶¶ 65-68. Those documents, which the Court may consider on this motion (*Moving Brief*, p. 6) refute Plaintiff's characterizations. If a document integral to a complaint contradicts an

Plaintiff tacitly recognizes this (*Opposition*, p. 9), but to muddy the waters Plaintiff cites older cases that predate *McCulloch* regarding general "assignability" of ERISA health benefits. These cases have nothing to do with the issue before the Court. CareFirst does not quarrel with the "assignability" of ERISA health benefits as a general matter. *Moving Brief*, p. 14. The issue before the Court, however, is how general "assignability" is impacted by an anti-assignment provision. As CareFirst has explained, every Circuit has concluded that an anti-assignment provision forecloses general "assignability" for standing purposes. *Moving Brief*, p. 14; *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)(collecting cases).

Here, the Plan contains unambiguous anti-assignment provisions. *Moving Brief*, p. 12. Although Plaintiff endeavors to spin the SPD's "spendthrift clause" as permitting the Patient's assignment, CareFirst has explained how spendthrift clauses pertain to wage garnishments, judgment levies,  and a member's ability to pledge a benefit as collateral before he receives it – not to ERISA standing in a federal lawsuit. *Moving Brief*, p. 15-17. The spendthrift clause does not, as Plaintiff contends, permit a patient to transfer ERISA standing so long as he does it *after* the claim is adjudicated. Intuitively, this proposition is illogical given that it would nullify the Plan's other anti-assignment clauses.

Further, even if the SPD's spendthrift clause created some sort of "ambiguity," as Plaintiff contends, Plaintiff's assertion that this clause controls over the EOCs (the clarity of whose anti-assignment provisions Plaintiff does not challenge), is incorrect. The EOC controls, as it contains the integrated Plan terms, whereas the SPD is merely a "summary" document prepared by the plan

---

allegation in the complaint, the document controls, not the allegation, and the allegation is not entitled to a presumption of truth. *Rapoport v. Asia Elecs.*, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000).

sponsor. As the Supreme Court has explained, an SPD "communicat[es] with beneficiaries *about* the plan, but…[its] statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)[.]" *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). "After *Amara*, to the extent that the language of a 'plan summary' conflicts with the actual terms of the plan, the terms of the plan control." *Schussheim v. First Unum Life Ins. Co.*, 2012 WL 3113311, at * 3 (E.D.N.Y. Jul. 31, 2012). Courts have concluded in this context − where a plaintiff argues that an SPD permits assignments where the plan's terms otherwise prohibit them − that the plan terms control, not the SPD. *See Aerocare Medical Transport System, Inc. v. IBEW Local 1249 Insurance Fund*, 2018 WL 6622192, at *6 (N.D.N.Y. Dec. 18, 2018). Accordingly, even if the SPD's spendthrift clause created "ambiguity" (which it does not), Plaintiff does not dispute that the EOCs controlling anti-assignment provisions are *un*ambiguous.

Plaintiff also suggests that because the Plan may allow direct payments to providers for covered services, it must also allow assignments for purposes of standing in a federal lawsuit. *Opposition*, p. 9. Courts have rejected this argument. A plan's routine payments to providers does not waive an anti-assignment provision, nor do direct payments estopp a plan from invoking an anti-assignment provision as a defense. *See Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 122 (S.D.N.Y. 2016); *Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, 2019 WL 1409806, at *9 (S.D.N.Y. Mar. 28, 2019).

Nor does Plaintiff's purported status as a DAR under 29 C.F.R. 2560.503-1(b)(4) confer independent standing. 29 C.F.R. 2560.503-1 is an ERISA implementing regulation that applies to *internal* administrative appeals only, not to federal lawsuits. If a provider is foreclosed from asserting derivative standing as a "participant" or "beneficiary" under ERISA § 502(a)(1)(B) because of an anti-assignment provision, he cannot sidestep this roadblock by invoking his DAR

status under 29 C.F.R. § 2560.503-1(b)(4). Every court that has considered Plaintiff's argument has rejected it. *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, 2016 WL 2939164, at * 6 (S.D.N.Y. May 19, 2016); *Aerocare*, *supra*, at *8 ("[B]ecause Plaintiff was Patient X's authorized representative, Defendants were required by the terms of ERISA to deal with Plaintiff in that capacity related to the claim and appeals, regardless of whether the *assignment of benefits* was valid; such requirement to deal with Plaintiff throughout the claim and appeals does not negate the anti-assignment provision or otherwise entitle Plaintiff to sue for recovery of benefits in federal court pursuant to ERISA.");  *Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981 (D.N.J. Jul. 15, 2015); *Menkowitz v. Blue Cross Blue Shield of Illinois*, 2014 WL 5392063 (D.N.J. Oct. 23, 2014); *Memorial Hermann Health System v. Pennwell Corporation Medical and Vision Plan*, 2017 WL 6561165, at *10 (S.D. Tex. Dec. 22,  2017); *AllianceMed LLC v. Aetna Life Ins. Co.*, 2017 WL 394524 at * 3 (D. Ariz. Jan. 30, 2017); *Infoeuro Group v. Aetna Life Ins. Co.*, 2019 WL 3006549 , at * 9 (C.D. Cal. May 3, 2019).

Lastly, CareFirst addresses the Opposition's passing reference to a 2015 passage from the Federal Register dealing with "Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient Protections Under the Affordable Care Act." *See Opposition*, p. 11 (citing 80 FR 72192-01, at *72266 (Nov. 18, 2015)). The purpose of this citation is unclear, as it does not support Plaintiff's DAR argument, or even deal with provider standing in a federal lawsuit. This section of the Federal Register – which is non-binding in any event and certainly does not trump *later*-decided cases like *Mbody* and *Aerocare* – deals with ERISA's requirement that a plan maintain adequate administrative appeal and review procedures under 29 C.F.R. § 2560.503-1. This subject matter is

irrelevant to this motion.

In the end, Plaintiff cannot establish standing and the Court must dismiss the FAC.

## II.     The FAC is Time-Barred as to Patient's First Two Dates of Service.

Plaintiff's lack of standing aside, the FAC is time-barred as to the Patient's first two dates of service. The Plan contains a two-year limitations period, which requires claimants to bring a lawsuit within 24 months of the date on which a claim is "incurred." As defined by the Plan, a claim is "incurred" on the date of service. *Moving Brief*, p. 18-19; *Lessner Cert.*, Ex. B (p. 6), Ex. D (p. 8). The linguistic gymnastics Plaintiff plays as far as what it means to "incur" a claim, and the Opposition's discourse as to when a claim "accrues" in other contexts, are unavailing. Equally unavailing is Plaintiff's argument that the Plan's limitations period could not begin to run until Plaintiff exhausted her administrative appeals. Notably this section of the Opposition is not supported by any case citations. *Opposition*, p. 13-14.

To the extent Plaintiff wishes to analogize the Plan's standard limitations clause to other scenarios (*Opposition*, p. 13), under general insurance law a liability policy may specifically define the running date for a statute of limitations as the inception-of-loss date, – i.e., the date of the occurrence of the casualty or event insured against (in this case the Patient's medical procedures) – even if the insured's claim is not formally denied until some later time. *See Lobello v. New York Cent. Mut. Fire Ins. Co.*, 152 A.D.3d 1206, 1209 (N.Y. App. Div. 2017). The Plan similarly does that here. Suit must be brought within 24 months of the date a claim is "incurred," and the Plan specifically defines "incurred" as the date of "a Member's receipt of a health care service or supply for which a charge is made." *Moving Brief*, p. 12, 19.

There is no need to rely on analogies, however, because the Supreme Court, in this very ERISA context, has expressly rejected the argument Plaintiff makes in the Opposition – i.e., that

the 24-month limitations period could not have begun to run until the Patient exhausted her administrative remedies. In *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 496 F. App'x 129 (2d Cir. 2012), the Second Circuit affirmed the District Court's dismissal of plaintiff's ERISA action for benefits for failure to file suit within the plan's three-year limitations period, which ran from when "proof of loss is due." The Supreme Court affirmed the Second Circuit, holding that an ERISA plan and its participants may contract for a shorter limitations period – even one that commences running *before* a participant's cause of action under 29 U.S.C. § 1132 accrues – so long as period is reasonable. *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 571 U.S. 99, 109 (2013)("Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable.").

The *Heimeshoff* Court reasoned: "The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan." *Id.* at 108. Courts in this Circuit have consistently applied *Heimeshoff's* holding. *Moving Brief*, p. 19. Under ERISA, the law "necessarily allows parties to agree not only to the length of a limitations period but also to its commencement. The duration of a limitations period can be measured only by reference to its start date." *Id.* at 107. Here, the Plan unambiguously imposes a 24-month limitations period that runs from the date of service, and Plaintiff makes no argument that a two-year limitations period is unreasonable. The FAC is therefore time-barred as to the Patient's November 1, 2016 and May 10, 2017 dates of service.

### III.    Nothing in ERISA, the WHCRA, or the Plan Requires that Plaintiff be Reimbursed 100% of its Actual Charges for Patient's Surgery.

Plaintiff seeks 100% of its billed charges as a remedy. *FAC*, ¶¶ 1, 7, 33, 46, 53, 56, 81, 86. To state a claim, the FAC must tie this demand to a Plan term providing that billed charges are

actually due under *terms of the Plan itself*. *Moving Brief*, p. 20-21. Instead of following this pleading rule, the Opposition (like the FAC) clings to the erroneous notion that Plaintiff is entitled to billed charges (without any Patient cost-sharing, no less) because the WHCRA makes reimbursement for mastectomy-related breast reconstruction "different" for purposes of ERISA § 502(a)(1)(B). Plaintiff is wrong.[2]

Breast reconstruction cases do not enjoy special status for purposes of ERISA § 502(a)(1)(B) lawsuits. *See, e.g., K.S. v. Thales USA, Inc.*, 2020 WL 773166 (D.N.J. Feb. 20, 2020)(dismissing out-of-network plastic surgeon's claim for 100% reimbursement for breast reconstruction for failure to tie this demand for benefits to a plan term that could plausibly be construed as requiring their payment). The WHCRA neither modifies nor supplants ERISA, 29 U.S.C. § 1185b(e)(2), nor does it provide plaintiffs with any civil remedies in addition to those prescribed by ERISA. Further, Plaintiff's bold contention that the "statutory terms" of the WHCRA mandate 100% reimbursement of Plaintiff's actual charge, and its theory that "the terms of the WHCRA state that a plan's reimbursement for breast reconstruction surgery is different from reimbursement for other surgeries," are wrong, and the falsity of these assertions are underscored by the Opposition's lack of supporting citations. *Opposition*, p. 6, 18.

The WHCRA's only "mandates" are straightforward. The statute states that an insurer who provides a plan participant with benefits in connection with a mastectomy shall also provide coverage for: (1) all stages of reconstruction of the breast on which the mastectomy has been

---

[2]   To the extent the Opposition contains some fleeting references to Plan provisions, CareFirst joins Empire's brief regarding the FAC's failure to articulate the "what, how, and when" as to how these provisions compel 100% reimbursement for the Patient's procedures.

7

performed; (2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and (3) prostheses and physical complications of the mastectomy. 29 U.S.C. § 1185b(a). The WHCRA further states that the insurer must provide its participant with written notice of the foregoing requirements. *Id.* § 1185b(b). That is *all* the WHCRA does. The WHCRA mandates only that a plan cover mastectomy-related breast reconstruction to the same extent it covers other benefits. 29 U.S.C. § 1185b(a) ("Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage.").

A plan cannot, under the WHCRA, *exclude* mastectomy-related breast reconstruction from coverage as a "cosmetic" procedure, nor can a plan incentivize physicians to discourage breast reconstruction post-mastectomy so that the plan can save costs. The WHCRA would further preclude singling out mastectomy-related breast reconstruction for disparate treatment by, for example, imposing a $1,000 per diem hospital co-payment on the patient when other covered inpatient admissions require only a $500 copayment. That is a far cry, however, from a mandate that mastectomy-related breast reconstruction receive *better* coverage terms than any other service or supply under the Plan via 100% reimbursement of out-of-network charges.

The sole opinion interpreting the WHCRA in this context – which came from this District – refutes Plaintiff's position. In *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416 (S.D.N.Y. 2005), *aff'd*, 517 F.3d 614 (2d Cir. 2008), Judge McMahon rejected the argument that a plan can only satisfy the WHCRA's parity mandate by "reimbursing [the member] for 100% of the amount billed by her surgeon, regardless of the other terms  and conditions of the Plan." *Id*. at 427. The Second Circuit affirmed Judge McMahon's detailed opinion, which the Moving Brief quotes at length. *Moving Brief*, p. 22-23. The holding of *Krauss* (which the Opposition

conspicuously relegates to a footnote, *Opposition*, p. 19), coupled with the general case law cited in the Moving Brief regarding what a plaintiff must plead in order to state a claim for ERISA benefits, warrants dismissal of the FAC. The FAC simply alleges generally that (a) because coverage for breast reconstruction post-mastectomy is subject to certain WHCRA requirements, and (b) because the Plan's prescribed out-of-network benefit for the subject procedures fell too far below what Plaintiff considers a reasonable payment, the Plan is now required to pay 100% of Plaintiff's billed charge.

Nothing in ERISA, the WHCRA, the Plan, or the case law supports this argument, and no court has ever endorsed it. Nothing entitles Plaintiff to its actual charge and the Court must dismiss the FAC with prejudice.

## <u>CONCLUSION</u>

At bottom, by arguing that the FAC should survive a motion to dismiss, Plaintiff is effectively asking the Court to make new law. The Court should decline to do so. For the reasons CareFirst and Empire have articulated, the Court should dismiss the FAC with prejudice.

**BECKER LLC**
Attorneys for CareFirst


By:    <u>/s/ *Michael E. Holzapfel, Esq.*      </u>
           Michael E. Holzapfel

Dated: April 24, 2020

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the foregoing reply brief submitted in further support of CareFirst's motion to dismiss contains 2,714 words, exclusive of the cover page, table of contents, table of authorities, and this certification of compliance. This is fewer than the 2,800-word maximum on reply briefs imposed by Section 2(D) of the Court's individual practices. I further certify that the foregoing brief complies with the additional requirements imposed by Section 2(D) of the Court's individual practices.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ *Michael E. Holzapfel*
MICHAEL E. HOLZAPFEL

Dated: April 24, 2020

10